## Darby *v.* State.

[91 South. 37. No. 22177.]

Jury. *Juror having had testimony in former trial related to him and having fixed opinion is not incompetent, although he made oath that he was impartial.*

 A juror who has had all the testimony that was given at a former trial of a case detailed to him by a friend who was present at the former trial and heard the testimony, and who had discussed with this friend all the details of that testimony and had formed a fixed opinion that the defendant ought to be convicted on that testimony, was incompetent, and the fact that he made oath that he was impartial did not render him competent under section 2685, Code 1906; section 2177, Hemingway's Code.

Appeal from circuit court of Tate county.

Hon. E. D. Dinkins, Judge.

P. W. Darby was charged with murder and convicted of manslaughter, and, from a judgment sentencing him to the penitentiary, he appeals. Reversed and remanded.

*J. F. Dean,* for appellant.

We contend that the gravest and most palpable error of the lower court was in refusing to grant a new trial on account of the juror, Tom Rhodes, being clearly an incompetent juror. To permit a man to sit as a juror on the life or liberty of a citizen where he has already a decided opinion of the defendant's guilt goes to the very fountain of justice, the purity and impartiality of the trial jury.

Ed Baker, a white man, testified that he was a witness in the case and had been present at the former trial of this cause and had heard the testimony of every witness; that a few days before this trial, he detailed to Tom Rhodes, the juror, their evidence from the beginning to the end of the case fully. What Rhodes heard then was not rumor but a detailed statement of the witness' sworn testimony, which statement so made to him by Baker he admits was substantially as testified to by the witnesses on the trial before him as a juror; and from this detailed statement he formed his opinion which was that defendant was guilty and should be in the penitentiary.

He did not disclose what he had heard nor the opinion that he had formed, but says he stated that he had rumors and hearsay, of the case, he did not disclose that he had heard the detailed evidence from a state's witness of what the other witnesses had testified at the former trial so that the court or counsel could ask him about the extent of his knowledge of the facts in the case or of the fixedness of his opinion and accept or challenge him as they deemed best. This case is very much stronger than the *Jeffries case,* 74 Miss. 675.

In that case the juror said: "This is a very different case from the *State* v. *Moffett* (referring to a case recently tried in Marshall county), that Moffett was justifiable in that case but that Jeffries, the defendant, was not justifiable in killing Odell; here the witness, Baker and the juror both said the juror Rhodes said Kizer and Darby were both guilty and both ought to be in the penitentiary. Baker says

Rhodes told him that if men were not convicted of such crimes they had as well do away with the court house. Rhodes does not deny this but says: "I can't say I did or did not." The law does not permit a juror to pass upon his own qualifications nor to say what opinion will disqualify, but in answer to a question by the county attorney: "Had you any fixed opinion in the case?" he answered: "Not that wouldn't be changed by the evidence." This is an admission that it would require evidence to remove the opinion that he then had, but how much evidence it would require, he perhaps did not know himself.

In the Jeffries case the court said: "He was convicted by a juror (so far as his voice went) who had in effect pronounced the prisoner guilty before he went into the jury box to give him a fair and impartial trial." In the same case the court says: "A juror who has an impression or opinion is not allowed to say himself, under oath, that he is impartial and take his seat, but is to be examined by the court and counsel for defendant and the state; it is then the impression made on the court that determines his competency." In this case as in the Jeffries case, if the juror had told the court that in his opinion the defendant was not justifiable, no court would have permitted him to sit as a juror to try it. "It would be no trial, so far as that juror was concerned." The Jeffries case reviews all decisions up to that time bearing on this question, all of which cases sustain our position in this case.

We might say further in passing, that the juror said that both Kizer and Darby were guilty but that if Kizer was turned loose, Darby ought to be turned loose too; now the facts are that at the very time Darby was tried and convicted, that Kizer was also tried and convicted of manslaughter and appealed to this court and his appeal was dismissed by this court, as its records will show.

I also call the attention of the court to the *Klyce case*, 79 Miss. 652, which is not as strong as this case because the juror there divulged that he had an opinion, but the court held that he was competent and the defendant was

forced to challenge him and he did not actually try the case, but the action of the court only forced him, the defendant, to exhaust his challenges on this juror. Here Rhodes did not divulge the fact that he had a very decided opinion and actually tried the case.

In *Shepproc case,* 79 Me. 740, the court says referring to the Jeffries case: "If a juror on his *voir dire* conceals facts which render him incompetent and serves upon a jury, a verdict of conviction will be set aside and a new trial granted. I call especially to the attention of the court *Fugate* v. *State,* 82 Miss. 189, where a juror heard the details of the case from one who heard the witnesses testify (as here) and the court held that it did not matter how the opinion was formed, if it existed, it disqualified the juror.

Again in *Dennis* v. *State,* 91 Miss. 221, the court said the court will be liberal in its interpretation of language used by a juror, which tends to show bias, when the object is to show a juror disqualified on account of acts, showing prejudice to the end that an impartial jury may be secured. While ordinarily it will not do so, it is the duty of the court to reverse the lower court in its findings of fact, whenever it is satisfied that the lower court has erred in holding a juror competent when this court is clearly of the opinion that he was not competent. This position, says the court, cannot be questioned. Citing the *Jeffries case* and *Sheppard cases, supra,* see, also *Murphy* v. *State,* 92 Miss. 203, to the same effect.

We respectfully submit that taking this record as a whole, appellant has not had that fair and impartial trial guaranteed to him by the constitution and laws of the state of Mississippi and we most respectfully request and urge this court to reverse and to remand this cause.

*D. C. Enochs,* assistant attorney-general, for the state.

Opposing counsel, in support of his contention that this juror was incompetent, and that a new trial should be awarded by reason of his having participated in the ver-

dict, cites the following: *Jeffries* v. *State,* 74 Miss. 675; *Klyce* v. *State,* 79 Miss. 652; *Shepprie* v. *State,* 79 Miss. 740; *Dennis* v. *State,* 91 Miss. 221; *Murphy* v. *State,* 92 Miss. 203.

I shall not take up the cases cited by opposing counsel in an effort to differentiate them from the facts in reference to the juror in the case at bar. Judge TRULY in the case of *Gammons* v. *State,* 85 Miss. 103, examined into the Jeffries, Klyce and Shepprie cases, and it is only necessary for me to refer the court to its own examination of those cases through Judge TRULY. The juror, Rhodes, in this case is like the juror, Gillon, objected to in the Gammon case. Both appear to be men of intelligence, sincerity and frankness.

I call to the court's attention its language in the case of *Fugate* v. *State,* 82 Miss. 189, at page 194: "Section 2355 of the Code of 1892, does not mean that the mere fact that a proposed juror makes oath that he is impartial shall be conclusive of that fact. That section was intended to prevent the exclusion of a proposed juror on the mere ground that he had an impression or an opinion. Having such impression or opinion, he should not be summarily excluded if he would make oath that he was impartial. But, the oath made, it is at last, by the statutec, referred to the judgment of the circuit judge whether the juror is in truth and fact impartial, as to which the circuit judge will determine from all the evidence addressed to that point. He may, from all the evidence, hold him impartial, though he has impression or an opinion.

I desire here to call the court's attention to section 2685, Code 1906 (section 2177, Hemingway's Code).

Opinion Not to Render Incompetent in a Criminal Case When? The opinion that will disqualify a juror in a criminal case, when the court is satisfied that he has no bias or feeling or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may conduct, is not an opinion that it will not take evidence to remove, as was clearly stated in the *Fugate case, supra.* In

the case of *Murphy* v. *State,* 92 Miss. 203, cited by opposing counsel, the juror was held incompetent because it would take strong evidence, to remove his opinion. In the case of *Green* v. *State,* 72 Miss. 522, page 525 this court approved the language of Chief Justice MARSHALL of the supreme court of the United States in the trial of Aaron Burr, to-wit:

"Were it possible to obtain a jury without any prepossessions whatever respecting the guilt or innocence of the accused, it would be extremely desirable, to obtain such a jury; but this is, perhaps, impossible, and therefore will not be required. The opinion which has been avowed by the court is, that light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him."

The above language was again quoted and approved in the case of *Whitehead* v. *State,* 97 Miss. 537, and this court called attention to the fact that the jurors complained of in that case stated that they had no bias or feeling or prejudice against defendant, and had no desire to reach any result in it, except that to which the evidence may conduct.

I call the court's attention to the various annotations contained under the above section of the code quoted by me, and will not here cite the various cases that bear out my contention that the juror Rhodes in the case at bar was a competent juror. As I have stated, and as this court has several times said, each case must turn upon its own peculiar facts. And when the facts in the case at bar are considered and when the testimony bearing upon the competency of this juror is considered, it seems to me the court did not err in holding that Mr. Rhodes was a competent juror notwithstanding the fact that he had ex-

pressed an opinion in the case from an account of same given him by one who was not a witness of the crime.

COOK, J., delivered the opinion of the court.

P. W. Darby was indicted and tried on a charge of murder and was convicted of manslaughter, and, from the judgment sentencing him to the penitentiary, he prosecuted this appeal.

This is the second appeal in this case, and the opinion on the former appeal, which is reported in 121 Miss. 689, 84 So. 6, contains a full statement of the facts upon which the conviction is based.

We have given careful attention to all the assignments of error, but, in view of its importance, we will first consider the assignment which is based upon the refusal of the court to set aside the verdict and grant the defendant a new trial for the reason that one of the jurors, Tom Rhodes, was disqualified.

In support of this assignment appellant introduced a witness, Ed Baker, who testified that he had attended a former trial of the case and heard all the testimony there offered; that a few days before the last trial he discussed the case with the juror Rhodes, and fully detailed to him the testimony as given at the former trial. This witness testified, in part, as follows:

"Did you discuss with him the testimony in the case?" "Yes, sir; he told me about the Kizer case. I told him, from the time the difficulty started at Darby's house and ended at Savage, I didn't think they could convict him, and I asked him what he thought of the Kizer case, and he said it looked like, from what he could hear, that Darby was more justifiable in shooting than Kizer was, and he thought if they convicted Kizer that they ought to send both of them up; but they turned Kizer loose." "Did he say whether he thought they ought to have been convicted?" "He said they ought to be convicted; if they didn't convict a man of crime like that—turn him loose—they ought to do away

with the courthouse." "Did he discuss the testimony in the Darby case as well as the Kizer case?" "I went through the testimony in the Darby case, from the house down to Savage and how it all happened." "You told him what the witnesses testified to in court?" "Yes, sir." "You told him that?" "Just as near as I heard it." "You had been here at court and knew what the witnesses had testified to?" "Yes, sir." "Did you detail to him the facts of the killing?" "Yes, sir." "Did he express himself?" "Yes, sir; as I would inform him from the different witnesses. I went over the whole thing with him." "You heard all the details and detailed them to Rhodes?" "Yes, sir; from the beginning of it until it ended."

The witness also testified that this juror stated to him that he thought both Kizer and Darby ought to be convicted, but since they left Kizer loose they would also let Darby loose, but that if men were brought up in court for killing a man in a little dispute, and turned loose, then a man ought to take his gun and shoot his way out.

The juror Rhodes was introduced as a witness, and as we construe his testimony it is in effect an admission of the truth of the testimony of the witness Baker. When asked if he had not said that both Kizer and the defendant, Darby, ought to serve a term in the penitentiary, his reply was, "Yes, sir; I might have said that." He would neither admit nor deny that he had stated that, if men who committed such crimes were turned loose, there was no use to have courts or trials, and when a man was insulted he should shoot his way out. He testified that when asked on his *voir dire* whether he had discussed the case with any one or had a fixed opinion, he stated to the court that he had not discussed the case with any eyewitness and had no fixed opinion that could not be changed by the evidence; that in the trial of the case he had not been actuated by any motive of bias or prejudice; that he had been fair and impartial, and, to the best of his ability, he had not permitted himself to be influenced by anything except the evidence and the law that was given to the jury.

After a careful consideration of all the testimony adduced on the motion for a new trial, we are convinced that this juror, Rhodes, was incompetent. Although he qualified himself on his *voir dire*, it is apparent that he concealed from the court the fact that he had a fixed opinion based upon a detailed statement of all the facts sworn to by the witnesses at a former trial. True, he said the opinion which he had could be changed by the testimony, but he had already heard from his friend and neighbor a complete narrative of the testimony of each witness offered at the former trial, and, after a full discussion of this testimony, he had formed this opinion and had given forcible expression to the view that, upon this evidence, the defendant ought to be convicted. Under the provisions of section 2685, Code of 1906, section 2177, Hemingway's Code, the fact that a juror makes oath that he was impartial is not conclusive of that fact, and, while we hesitate to interfere with the findings of fact by the trial judge on a question such as is here involved, we cannot concur in the view that, under the facts here, the juror was competent.

The action of the court in excluding the alleged dying declaration of the deceased, which was offered by the defendant, was correct, and we find no reversible error in any of the other assignments. For the error in refusing a new trial, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*